UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at Covington

| | | |
|---|---|---|
| KATHLEEN KEITZ, | ) | |
| | ) | Civil Action No. 2:25-cv-00125-SCM |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| CITY OF COVINGTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Kathleen Keitz brings this civil rights action under 42 U.S.C. § 1983 and Kentucky state law against the City of Covington (the "City"), City Police Officers Doug Ullrich and Sean Sinacori, City Chief of Police Brian Valenti, and Does 1 through 50.  Keitz's claims arise out of two encounters between her and City police officers that took place on October 26 and 27, 2024.  The Defendants move to dismiss several counts of Keitz's Complaint.[1]  Because the Plaintiff failed to plausibly allege some of her claims in the Complaint, the Defendants' motion to dismiss, [Dkt. 3], is granted in part and denied in part.

## I.    Facts

The following facts contain Plaintiff Kathleen Keitz's allegations from her Complaint, which the Court must accept as true for the purpose of ruling on the

---

[1] Except for Does 1 through 50.

Defendants' motion to dismiss. *See Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). Keitz is a resident of Covington, Kentucky, and on October 26, 2024, she was in her apartment when City police officers in the building hallway loudly knocked on her neighbor's door. [Dkt. 1, Complaint, at 4]. After Keitz opened her door to investigate the commotion, the officers asked her if she knew of her neighbor's whereabouts and whether the neighbor was in Keitz's apartment. [*Id.*]. Despite Keitz's response that she did not know where her neighbor was, Officer Sinacori and an unidentified City officer forced entry into her apartment to conduct a search without either a warrant, probable cause, or consent. [*Id.* at 5]. The two officers then left without having found Keitz's neighbor. [*See id.*].

Later that day, Keitz left her apartment and was using her boyfriend's truck with his permission. [*Id.*]. When she returned to her apartment, she found her boyfriend engaging in infidelity. [*Id.*]. Keitz then left in the same truck and parked it two blocks away. [*Id.*].

The same night at about 12:30 a.m. on October 27, City police officers stopped Keitz in Covington while she was in her boyfriend's truck. [*Id.*]. The officers instructed Keitz to exit the vehicle, and a conversation ensued. [*See id.*]. Keitz was frustrated with her treatment during the prior search of her apartment, and Officers Ullrich and Sinacori escalated the encounter by directing expletives at Keitz. [*Id.*]. Next, Officer Ullrich attempted to arrest Keitz by pinning her arm against her back. [*Id.*]. This force broke Keitz's arm, which Keitz claims to be "immediately obvious on

2

the body-worn camera footage."[2] [*Id.*]. Officer Ullrich then continued to use force against Keitz as she screamed in pain due to her broken arm. [*Id.*]. After Keitz's arrest she pleaded guilty in Kenton District Court to unauthorized use of a motor vehicle in violation of KRS § 514.100, license to be in possession in violation of KRS § 186.510, and second-degree disorderly conduct in violation of KRS § 525.060.[3] [Dkt. 3-4, CourtNet Docket, at 1–2 (providing that the prosecutor dismissed her resisting-arrest charge)].

Through both encounters with Keitz, the City police officers allegedly violated City policies and orders that prohibit invalid searches and excessive force. [Dkt. 1 at 5, 8]. According to Keitz, the City is aware that Officer Ullrich "has a long history of violent attacks on law-abiding citizens and unconstitutional searches." [*Id.* at 7]. But

---

[2] The Defendants attempt to introduce this body-worn camera footage in support of their motion, [Dkt. 3-2; Dkt. 3-3; Dkt. 8-1], but the Court will rely solely on Keitz's account of the second encounter. The Court may only consider the Defendants' video footage if: (1) the complaint "implicitly relies on the videos by recounting facts that could only be known to [the plaintiff] by watching the videos"; and (2) "the videos are clear and 'blatantly contradict[ ]' or 'utterly discredit[ ]' the plaintiff's version of events." *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "This is because if a video clearly depicts a set of facts contrary to those alleged in the complaint, this makes a plaintiff's allegations implausible." *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024) (citing *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017)). But here, the footage does not contradict Keitz's allegations about her arrest, so the Court will limit its analysis to the allegations in the Complaint.

[3] It is well established that the Court "may take judicial notice of proceedings in other courts of record," *Granader v. Pub. Bank*, 417 F.2d 75, 82 (6th Cir. 1969), including relevant criminal convictions that a plaintiff omits from the complaint, *see Nichols v. Skrmetti*, No.: 3:25-cv-442, 2025 WL 3299727, at *1 (M.D. Tenn. Nov. 26, 2025); *Warner v. Univ. of Louisville*, No. 3:12–CV–395–H, 2013 WL 1703863, at *2 (W.D. Ky. Apr. 19, 2013) (finding that the plaintiff's guilty plea was an admission of fact that the court could consider for a motion to dismiss). Thus, the Court takes judicial notice of Keitz's convictions to the extent they contradict any of her allegations.

rather than punish Officer Ullrich for his violations, the City has allegedly given him awards, raises, and a promotion to a position that involves training other officers. [*Id.*].  Further, the City has allegedly "failed to properly train or supervise" its officers pursuant to City policies, and it has similarly rewarded the actions of other officers as well.  [*Id.*].

Keitz filed this action against the Defendants based on these two encounters, including claims for: (I) excessive force in violation of the Fourth Amendment (brought under 42 U.S.C. § 1983); (II) failure of the City to adequately train, supervise, and discipline its police officers (brought under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)); (III) battery; (IV) assault; (V) intentional infliction of emotional distress; (VI) negligence; (VII) negligent hiring, retention, training, supervision, and discipline; (VIII) false imprisonment; (IX) false arrest; (X) violation of the Fourteenth Amendment; and (XI) illegal search of Keitz's residence.  [*Id.* at 9–16].

The Defendants now move to dismiss Counts II, V, VIII, IX, and X of the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[4] [Dkt. 3].

## II.    Analysis

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint.  *Ohio v. United States*, 849 F.3d 313, 318 (6th Cir. 2017) (quoting

---

[4] The fact section in the Defendants' brief suggests that they also move to dismiss Count XI, but they failed to include any arguments addressing Keitz's claims in Count XI. [Dkt. 3 at 4].  Therefore, the Court will exclude Count XI from its analysis.

*Riverview Health Inst. LLC*, 601 F.3d at 512). "To survive a motion to dismiss, a complaint must present facts that, if accepted as true, sufficiently 'state a claim to relief that is plausible on its face.'" *Coley v. Lucas County*, 799 F.3d 530, 537 (6th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.*; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

The Court views the complaint in the light most favorable to the plaintiff and must accept all factual allegations as true. *Riverview Health*, 601 F.3d at 512. All reasonable inferences are drawn in favor of the plaintiff. *Coley*, 799 F.3d at 537. "The Court need not, however, 'accept the plaintiff's legal conclusions or unwarranted factual inferences as true.'" *Sandmann v. WP Co. LLC*, 401 F. Supp. 3d 781, 787 (E.D. Ky. 2019) (quoting *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)). Applying this standard, the Court concludes that some of Keitz's claims lack adequate factual content to survive the Defendants' motion to dismiss. Specifically, the Court partially dismisses Count II and dismisses Counts V, VIII, IX, and X in their entirety. However, the Court will allow Keitz to amend her Complaint to the extent she can make additional factual allegations that would satisfy the requirements of Rule 8 as to the dismissed claims. *See Walker v. Shermeta, Adams,*

5

*Von Allmen, PC*, 623 F. App'x 764, 768 (6th Cir. 2015) ("[O]rdinarily, 'if the requisite allegations are not in the complaint and a motion to dismiss for failure to state a claim upon which relief may be granted is made under Rule 12(b)(6), the pleader should be given the opportunity to amend the complaint, if she can, to show the existence of the missing elements.'" (quoting 5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Fed. Prac. & Proc.* § 1216 (3d ed. 2015))).

### A. Count II, Keitz's *Monell* claim, fails as to the allegation of improper training or supervision, but may proceed as to the City's alleged custom of tolerance for unconstitutional conduct by its police officers.

The Defendants argue that Keitz does not adequately allege a 42 U.S.C. § 1983 claim against the City for the failure to train, supervise, and discipline its police officers to prevent unreasonable searches and uses of force.  Section 1983 provides a private cause of action for the injurious deprivation of a plaintiff's rights by a defendant who acted under the color of state law.   The Supreme Court extended § 1983 to cover suits against local governments or municipalities in *Monell*, but only when the execution of an illegal policy or custom caused the plaintiff's injury.[5]   436 U.S. at 694.

> A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of*

---

[5] Under § 1983, local governments are only responsible for their own unlawful acts, and there is no vicarious liability for the actions of employees. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).

6

*Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Keitz's allegations consist of two separate *Monell* claims that address different kinds of illegal policies or customs. The first claim alleges inadequate training or supervision of the City's police officers, and the second alleges a custom of tolerance of federal rights violations by City police officers. [Dkt. 1 at 10]. Keitz lacks sufficient factual allegations to support her failure-to-train-or-supervise claim, but she adequately alleges that the City had a custom of tolerance for constitutional violations that caused her injuries.

### 1. Keitz does not adequately allege that the City failed to train or supervise its officers.

To assert a failure-to-train-or-supervise claim, Keitz must allege: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the [City's] deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury."[6] *Romero v. City of Lansing*, 159 F.4th 1002, 1015 (6th Cir. 2025) (quoting *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 286–87 (6th Cir. 2020)); *see also Connick v. Thompson*, 563 U.S. 51, 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."). This "narrow" theory of liability requires concrete allegations about a municipality's inadequate training or supervision of its officers. *Romero*, 159 F.4th at 1015. Bare allegations that a local government "failed to train

---

[6] Some courts treat the failure to supervise theory as separate from the failure to train, but the same "rigorous standards of culpability and causation" apply regardless. *Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010). Due to the significant overlap between the two, the Court analyzes these theories together.

its officers regarding" an issue are not sufficiently particular to state a failure-to-train claim. *Wright v. Louisville Metro Gov't*, 144 F.4th 817, 827 (6th Cir. 2025).

One of the difficulties with failure-to-train-or-supervise claims is that a plaintiff cannot adequately state a claim simply by alleging that the municipality should have trained or supervised its personnel better. Rather, a plaintiff must also allege that the inadequate training or supervision was the result of deliberate indifference on the part of the municipality. *See Romero,* 159 F.4th at 1015. "[D]eliberate indifference" arises when the municipality "disregarded a known or obvious consequence" of its policy or custom for officer training. *Connick,* 563 U.S. at 61 (alteration in original) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). This requires a plaintiff to allege that the municipality was "on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights" and that the local government "cho[]se to retain that program." *Id.*; *see also id.* at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). And it is "ordinarily necessary" to allege a prior "pattern of similar constitutional violations by untrained employees." *Connick,* 563 U.S. at 62; *see also Helphenstine v. Lewis County*, 60 F.4th 305, 323 (6th Cir. 2023) (noting that a single violation of federal rights can result in § 1983 liability, but only in narrow circumstances inapplicable here).

Keitz alleges that both of her encounters with City police officers are part of a

8

pattern of the City failing to train or supervise its officers to not conduct unreasonable searches or use unnecessary force. [Dkt. 1 at 2]. She claims that the City is aware of Officer Ullrich's history of violent attacks on citizens and unconstitutional searches and that Officer Ullrich trains other officers. [*Id.* at 7]. According to Keitz, these actions by Officer Ullrich and other officers violated the City's official policies. [*Id.* at 8]. But Keitz's Complaint is devoid of any specific facts that would show she can plausibly establish the three elements of a failure-to-train-or-supervise claim.

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement of the claim showing that the pleader is entitled to relief." The point of that requirement is to give the defendant "fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Fair notice does not require "detailed factual allegations," *id.* (citing *Conley*, 355 U.S. at 47; *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)), but it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action," *id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Keitz's failure-to-train-or-supervise claim, however, fails to meet the standard for providing fair notice of the grounds on which the claim is based. In fact, her Complaint contains virtually no factual allegations—and certainly no concrete allegations—concerning the alleged lack of training. *See Romero*, 159 F.4th at 1015 (requiring concrete allegations showing inadequate training). At best, her allegations are vague, conclusory, and speculative rather than concrete and plausible. *See id.* ("Even at the motion-to-

9

dismiss stage, [the plaintiff] must plead specific facts beyond speculation and bare recitation of the standard for municipal liability.").

As to the first element of the claim—*i.e.*, that the training or supervision was inadequate for the tasks performed—she essentially does nothing more than make "[m]ere allegations that an officer was improperly trained or that an injury could have been avoided with better training," which is plainly not enough. *Miller v. Calhoun County*, 408 F.3d 803, 816 (6th Cir. 2005) (citing *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998)). And without concrete allegations about the particular omissions in the City's training programs or supervision of officers, Keitz also cannot show the second element—deliberate indifference. *See Romero*, 159 F.4th at 1015. In other words, Keitz's conclusory allegations do not set forth enough facts to permit one to plausibly conclude that the City's training or supervision of its police officers was so obviously inadequate as to be the result of deliberate indifference. Keitz gets somewhat close to addressing deliberate indifference by alleging a pattern of prior violations by Officer Ullrich, but the ultimate problem is that her allegations do not create a clear connection between the supposedly inadequate training or supervision and her injuries. *See id.* (holding that the alleged inadequacy must have been "closely related to or actually caused the injury" (quoting *Ouza*, 969 F.3d at 286–87)). Due to Keitz's lack of specificity and her reliance on labels and formulaic recitations, it is impossible to know whether better training or supervision would have prevented her injury.

Keitz's failure-to-train-or-supervise claim under *Monell* must be dismissed

because she has not made allegations that establish a plausible entitlement to relief. However, as explained above, Keitz may file an amended complaint if she is capable of pleading sufficient facts to cure the deficiencies in her Complaint. That is, she must plead sufficiently concrete facts that would allow the City to know in what manner it allegedly failed to train or supervise its police officers. Otherwise, the City will have no way of knowing the grounds upon which Keitz's claim rests. *See Twombly*, 550 U.S. at 555 (citing *Conley*, 355 U.S. at 47).

2. **Keitz properly alleges that the City maintained a custom of tolerance for constitutional violations by not disciplining its police officers.**

Keitz also asserts a custom-of-tolerance claim, which requires her to allege:

> (1) the existence of a clear and persistent pattern of [illegal activity]; (2) notice or constructive notice on the part of the [local government]; (3) the [local government's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the [local government's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Thomas*, 398 F.3d at 429 (quotation altered) (quoting *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)); *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994). A failure to act typically consists of a refusal to adequately investigate similar claims. *Burgess*, 735 F.3d at 478–79 (dismissing a custom-of-tolerance claim on summary judgment because the plaintiff did not set forth any facts of prior instances of similar abuses).

Keitz's allegations are enough to state a custom-of-tolerance claim, but just barely. She asserts that the City has a custom of tolerating constitutional violations by its officers, including unreasonable searches and excessive uses of force. Her

11

Complaint references Officer Ullrich's alleged history of violent attacks on citizens and unconstitutional searches, the City's awareness of those attacks, and the City's lack of disciplinary action against him or other officers who engage in unlawful conduct. [Dkt. 1 at 7–8, 10]. Further, she alleges that the City has rewarded Officer Ullrich by promoting him and giving him raises and awards for his service. [*Id.* at 7]. And she alleges that by doing so, the City has created "an atmosphere in which officers believe they may act with impunity when engaging in unlawful conduct." [*Id.* at 10]. Thus, according to Keitz, the City's tolerance of these kinds of constitutional violations caused Officers Ullrich and Sinacori to disregard City policies on uses of force, which resulted in her broken arm during the arrest. [*See id.* at 8].

While there is not an abundance of specificity in these allegations, they are nevertheless factual allegations that—when taken as true—create a plausible entitlement to relief based on a custom-of-tolerance claim. And unlike the allegations behind Keitz's failure-to-train claim, these allegations do not just rely on "labels and conclusions" or "a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286). Instead, Keitz's custom-of-tolerance claim is backed by factual allegations that—albeit somewhat vague—create a plausible basis for liability. In other words, they adequately inform the Defendants of the grounds upon which the claim rests. *See id.* (citing *Conley*, 355 U.S. at 47).

The Defendants argue that Keitz's custom-of-tolerance claim is inadequate because she does not show that the municipality ignored or "inadequately investigat[ed]" prior similar instances of rights violations. [Dkt. 8 at 7 (quoting

12

*Burgess*, 735 F.3d at 478)]. But unlike the plaintiff in *Romero* who made speculative allegations that merely recited the standard for municipal liability, *see* 159 F.4th at 1015, Keitz alleges that "ULLRICH has a long history of violent attacks on law-abiding citizens" and further states that the City was "well aware of ULLRICH's long history of such conduct" and "allowed ULLRICH and other officers to act with impunity" and "rewarded their behavior by giving them promotions and raises. [Dkt. 1 at 7–8]. While not overly specific, these are factual allegations, and they must be taken as true at this point in the proceedings. Moreover, it can be reasonably inferred from these allegations that the City disregarded or inadequately investigated the unconstitutional uses of force and searches by its officers. So it would be premature to dismiss Keitz's custom-of-tolerance claim before allowing discovery to proceed. The Defendants' motion must be denied as to this claim.

### B. Count V does not plausibly allege a claim of intentional infliction of emotional distress.

Keitz asserts a claim of intentional infliction of emotional distress ("IIED") under Kentucky law, but the Defendants argue that it is subsumed by her assault and negligence claims and therefore should be dismissed. The Defendants have the better argument given IIED's limited role in Kentucky as a gap-filler tort and the lack of factual content pertaining to IIED in Keitz's Complaint.

> Under Kentucky Law, a claim for IIED (also known as the tort of outrage), standing alone, must allege (1) "that defendant's conduct was intentional or reckless," (2) "that the conduct was so outrageous and intolerable as to offend generally accepted standards of morality and decency," (3) "that a causal connection exists between the conduct complained of and the distress suffered," and (4) "that the resulting emotional stress was severe."

13

*Oquendo v. United States*, No. 7:23-cv-40-REW-EBA, 2025 WL 2495771, at \*14 (E.D. Ky. Aug. 29, 2025) (quoting *Banks v. Fritsch*, 39 S.W.3d 474, 480–81 (Ky. Ct. App. 2001)). IIED arose as a "gap-filler" tort to provide redress for extreme emotional distress when other common law actions did not. *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299–300 (Ky. Ct. App. 1993). Kentucky law does not allow a plaintiff to recover for IIED where "one of the traditional torts such as assault, battery, or negligence" allows recovery for emotional distress damages. *Id.*; *Childers v. Geile*, 367 S.W.3d 576, 582–83 (Ky. 2012).

A plaintiff can plead IIED as an alternative to other torts if the plaintiff plausibly alleges facts that allow the IIED claim to stand on its own. *Childers*, 367 S.W.3d at 582. "[T]here can be only one recovery on a given set of facts," so the complaint must contain facts that specifically advance the plaintiff's IIED claim. *Id.* This includes facts suggesting that the defendant engaged in actions that "were intended only to cause [the plaintiff] extreme emotional distress, rather than to merely touch or deprive [the plaintiff] of [his or her] liberty." *Banks v. Fritsch*, 39 S.W.3d 474, 481 (Ky. Ct. App. 2001).

For example, this Court held in *Oquendo* that the plaintiffs failed to state an IIED claim relating to assault and battery allegations because there was no indication that the defendants committed those torts with the "*sole intent* of causing [p]laintiffs severe emotional harm." 2025 WL 2495771, at \*14. Further, the plaintiffs already alleged severe emotional harm as an injury for their battery claims. *Id.* Thus, there was no gap for the IIED claim to fill, and it had to be dismissed. *Id.*

14

Keitz's IIED claim arises out of her two encounters with the Defendants, but the first encounter at her apartment does not serve as an adequate basis for relief. She alleges that Officer Sinacori and Does 1-50 forcefully entered her apartment to conduct a search "without cause," and that this made her suffer "emotional damage resulting in a fear of government officials and post-traumatic stress-related illnesses . . . ." [Dkt. 1 at 5, 9, 12]. These allegations do not give rise to an IIED claim. Keitz does not allege any facts suggesting that the Defendants intentionally or recklessly caused her any emotional distress, nor does she adequately allege that the search of her apartment was outrageous. And Keitz cites no case law finding similarly threadbare allegations to be sufficient to survive a Rule 12(b)(6) motion.

Her second encounter with Defendants also fails to support her IIED claim because any set of facts upon which she could recover emotional distress damages would be covered by her other tort claims. In other words, she does not allege any facts that advance her IIED claim but not her battery, assault, or negligence claims. She alleges that Officer Ullrich and Sinacori conducted a stop during which Officer Ullrich verbally abused her, broke her arm while attempting to pin it behind her back, then continued to use force against her despite her screaming in pain. [*Id.* at 5]. But the Complaint contains no allegations that the Defendants assaulted or battered Keitz with the "sole intent" of causing Keitz severe emotional harm. *Oquendo*, 2025 WL 2495771, at *14. Further, Keitz incorporates all the same factual allegations for her IIED claim as her other tort claims, including her emotional distress injuries. [Dkt. 1 at 9–13].

15

Keitz argues it is too early to determine whether her IIED claim is duplicative, [Dkt. 7 at 9], but there is no path for her to recover for IIED and not for at least one of her other tort claims that permit recovery for emotional distress. Thus, there is no gap in her Complaint that an IIED claim can fill. Accordingly, Keitz's IIED claim must be dismissed. But, once again, if Keitz can plead facts that would show how her IIED claim is not duplicative of her other tort claims, then she is free to do so in an amended complaint.

## C. Counts VIII and IX fail to plausibly allege claims of false imprisonment and arrest.

Next, the Defendants argue that Keitz cannot assert a false-imprisonment claim as to either encounter she had with the Defendants.[7] For the second encounter, Keitz's Complaint alleges that Officers Ullrich and Sinacori had no legal basis to arrest her, [Dkt. 1 at 14–15], but the Court takes judicial notice of Keitz's guilty pleas that arose out of her arrest, [Dkt. 3-4 at 1–2]. Keitz cannot plead guilty to a criminal offense used as the basis for her arrest and then subsequently assert that there was no legal basis to have arrested her. *See Broaddus v. Campbell*, 911 S.W.2d 281, 283 (Ky. Ct. App. 1995). Recognizing this insufficiency, Keitz concedes that the second encounter was a valid arrest and cannot support a false-imprisonment claim. [Dkt. 7 at 13]. This leaves only her first encounter with the Defendants as a potential basis

---

[7] Under Kentucky law, in cases against police officers, "there is simply no distinction between false arrest and false imprisonment." *Lexington-Fayette Urb. Cnty. Gov't v. Middleton*, 555 S.W.2d 613, 619 (Ky. Ct. App. 1977); *see also Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007) ("[R]ealizing that every confinement of a person is an imprisonment, whether it occurs in a prison or a house, we shall refer to the torts of false imprisonment and false arrest together as false imprisonment."). Therefore, the Court will analyze Keitz's claims of false imprisonment and arrest as one.

16

for recovery, but her claim must fail due to a lack of supporting factual allegations.

A law enforcement officer is liable for false imprisonment if he or she intentionally confines a plaintiff against the plaintiff's will for any amount of time without the privilege or immunity to do so, and the plaintiff is aware of the confinement at the time it occurs. *See Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007); *Grayson Variety Store, Inc. v. Shaffer*, 402 S.W.2d 424, 425 (Ky. 1966). Confinement can occur anywhere the plaintiff does not wish to remain or go. *See Great Atl. & Pac. Tea Co. v. Billups*, 69 S.W.2d 5, 6 (Ky. 1934). However, a plaintiff cannot recover for false imprisonment based on the "mere verbal direction of another, unaccompanied by force or threats of any character." *Grayson Variety Store*, 402 S.W.2d at 425.

Keitz's factual allegations arising out of her first encounter with the Defendants do not support a false-imprisonment claim. She alleges "that she was wrongfully confined and restrained" when Officer Sinacori and other Defendants "unlawfully forced entry" into her apartment without a warrant or probable cause and conducted a search. [Dkt. 1 at 5, 14]. Merely stating that she was "confined and restrained" is a threadbare recital of the elements of the tort and does not suffice to allege confinement. *See Iqbal*, 556 U.S. at 678. Keitz cites Fourth Amendment precedents to argue that the Defendants lacked a privilege or immunity to detain her, [Dkt. 7 at 12], but the facts in her Complaint do not suggest that the Defendants used any force or threats against her. Further, there is nothing to suggest that she wished to leave her apartment during the search. Keitz would need to allege that the Defendants blocked her from leaving her apartment or took some specific action that

17

would suggest she could not freely leave. Thus, her claims of false imprisonment and arrest must be dismissed. But if Keitz can plead facts that plausibly show she was wrongfully confined or restrained, then she is free to do so in an amended complaint.[8]

## D. Keitz's Fourth Amendment claim subsumes her Fourteenth Amendment claim.

Keitz also asserts a Fourteenth Amendment due process claim based on the force used against her during the second encounter, but the Defendants argue that this claim is subsumed by her Fourth Amendment excessive-force claim that rests on the same grounds. The Sixth Circuit has held that the Fourth Amendment—not the Fourteenth—applies to an excessive force claim from the time of arrest until a probable cause hearing. *Aldini v. Johnson*, 609 F.3d 858, 864–67 (6th Cir. 2010).

---

[8] In her response to the Motion to Dismiss, Keitz requests leave to allege a third incident of false arrest—her encounter with Officer Sinacori at the bus stop. [Dkt. 7 at 13]. The Court will not grant leave to add those allegations because doing so would be futile. *See Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005) ("A court need not grant leave to amend, however, where amendment would be 'futile.'" (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))). The bus stop encounter was captured on body camera footage that the Defendants have submitted to the Court, and that footage shows clearly that Officer Sinacori did not deprive Keitz of her liberty during that encounter. [*See* Dkt. 7-1, Officer Sinacori BWC Video]. To be sure, Officer Sinacori spoke to Keitz and asked her to accompany him to his police cruiser to verify whether there was a warrant for her arrest, but Keitz declined to do so and informed Officer Sinacori that there was not a warrant and that the matter had already been take care of. [*Id.* at 02:26–02:52]. After that, Keitz boarded the bus and went on her way. [*Id.* at 02:53]. Under these circumstances, no reasonable person could believe that Officer Sinacori had deprived Keitz of her liberty during that encounter. Of course, "[r]estraint constituting a false imprisonment may arise out of words, acts, gestures, or the like, which induce a reasonable apprehension that force will be used if the plaintiff does not submit." *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 288 (Ky. Ct. App. 2009) (quoting *Ford Motor Credit Co. v. Gibson*, 566 S.W.2d 154, 155 (Ky. Ct. App. 1977)). But "[b]are words are insufficient." *Id.* (quoting *Ford Motor Credit Co.*, 566 S.W.2d at 156). And the encounter at the bus stop involved nothing but bare words. Officer Sinacori did nothing that would have made a reasonable person believe that force would be used against her if she did not submit.

Keitz alleges excessive force during her arrest, so the Fourth Amendment clearly governs her claim, which she concedes in her Response Brief. [Dkt. 7 at 15]. The Court dismisses her Fourteenth Amendment claim and will instead apply the Fourth Amendment framework for excessive force.

## III. Conclusion

For the foregoing reasons, it is hereby **ORDERED** that the Defendants' Motion to Dismiss, [Dkt. 3], is **GRANTED IN PART and DENIED IN PART**. Counts V, VIII, IX, and X of Keitz's Complaint, as well as her failure-to-train-or-supervise claim in Count II, [Dkt. 1], are dismissed. The remainder of her claims may proceed. Finally, Keitz is granted leave to file an amended complaint consistent with this Opinion within 14 days of the date of this Opinion.

Signed this 30th day of March, 2026.

S. Chad Meredith, District Judge
United States District Court
Eastern District of Kentucky

19